IN THE CASE OF


UNITED STATES, Appellee

v.

Wilson L. McCRIMMON, Staff Sergeant
U.S. Army, Appellant

No. 02-0941

Crim. App. No. 20000075

United States Court of Appeals for the Armed Forces

Argued October 7, 2003

Decided August 3, 2004

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J. and BAKER, J. joined.  ERDMANN, J. filed a
separate dissenting opinion in which EFFRON, J., joined.

Counsel

For Appellant:  Captain Terri J. Erisman (argued); Colonel
Robert D. Teetsel, Lieutenant Colonel E. Allen Chandler, Jr.,
and Major Imogene M. Jamison (on brief); Captain Mary E. Card.

For Appellee:  Captain Janine P. Felsman (argued); Lieutenant
Colonel Margaret B. Baines, Major Mark L. Johnson, Captain
Charles C. Choi, and Captain Tami L. Dillahunt (on brief);
Captain Charles C. Choi.

Military Judge:  T. E. Dixon


**This opinion is subject to editorial correction before final publication**.

United States v. McCrimmon, No. 02-0941/AR

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of six specifications of larceny, five specifications of violation of a lawful order, and eight specifications of bribery, in violation of Articles 121, 92, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 921, 892, and 934 (2000), respectively. The adjudged and approved sentence provides for a bad-conduct discharge, reduction to the lowest enlisted grade, and confinement for 40 months. The Army Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. McCrimmon, A. 20000075 (Army Ct. Crim. App. August 27, 2002).

This Court granted review of the following issue:

> WHETHER APPELLANT'S PLEAS OF GUILTY TO BRIBERY AS
> CHARGED IN SPECIFICATION 7-9 OF CHARGE IV WERE
> PROVIDENT WHERE APPELLANT'S STATEMENTS DURING THE
> PROVIDENCY INQUIRY DEMONSTRATED THAT HE DID NOT HAVE
> THE REQUISITE INTENT TO HAVE HIS ACTIONS INFLUENCED
> IN EXCHANGE FOR SOMETHING OF VALUE.

For the reasons set forth below, we affirm the decision of the Court of Criminal Appeals.

## Factual Background

The charges against Appellant arose from Appellant's abuse of his position as a drill instructor at Fort Sill, Oklahoma, during the summer and fall of 1998. At the time of his offenses, a Brigade Policy Memorandum prohibited all personnel

2

assigned to the training center from engaging in financial transactions with trainees. Appellant repeatedly violated this order, stole money from his trainees, and engaged in a pattern of requesting and receiving bribes from them.

As a drill instructor, Appellant's job was to train recruits to become soldiers. In the training program, Appellant tried to instill Army values in the trainees. He initially fostered unit cohesion, individual pride, and personal loyalty both to the unit and to himself. Eventually, Appellant exploited these facets of training for his own financial benefit and manipulated the enlisted leadership of his unit and trainees in a complex web of larceny and bribery offenses.

Appellant's violations of the Brigade Policy Memorandum and larceny offenses included the following misconduct. Appellant collected $610.00 from trainees to purchase platoon t-shirts, but Appellant never purchased the t-shirts and kept the money. Appellant received approximately $100.00 from 16 trainees in his platoon to have their boots "dipped" to make them look shiny for the inspection. Appellant returned the boots to the trainees, without getting them dipped, and kept the money for himself. Appellant collected approximately $300.00 from his platoon under the pretense of providing a donation to assist the family of one of their members who was hospitalized. Appellant delivered only some of the money to the family in need and kept the remainder

of the money for his personal use.  Appellant solicited and received nearly $100.00 from his trainees to purchase a cleaner to make their weapons look more presentable for an inspection.  Appellant purchased only a small quantity of the cleaner and kept the remaining money.  Finally, Appellant solicited money from trainees to assist his mother because her home had been destroyed by fire.  Appellant informed the trainees that his mother had no place to stay and that he needed the money to purchase a plane ticket for his mother.  The platoon collected $250.00 and gave it to Appellant.  Actually, Appellant's mother was well taken care of by Appellant's sister and Appellant had no intention of purchasing airfare for his mother, and in fact kept the money for himself.  In each of these offenses, Appellant used his subordinates, the platoon enlisted leadership, to collect money from his trainees.

In addition to these larceny offenses, Appellant's misconduct included another dimension as Appellant committed multiple bribery offenses.  Appellant wrongfully asked for and received money from trainees with the intent to influence his decisions and actions regarding his performance of official duties.  Appellant asked for and received approximately $100.00 from three trainees to ensure that they would receive a passing score on their Physical Fitness Test (PFT) and would graduate with their class.  When one of the trainees actually failed this

test, Appellant intervened and passed the trainee, who eventually graduated on time.  On another occasion shortly before the trainees graduated, Appellant asked for payments of $60.00 and $100.00 from two trainees to grant them unauthorized liberty to spend extra time with their families and girlfriends.

The granted issue in the present case relates to three alleged bribery offenses (specifications 7 through 9 of Charge IV) that have their genesis in a single incident of trainee misconduct.  In early November 1998, three trainees in Appellant's platoon were caught going to the post shoppette without authorization.  The first sergeant threatened the trainees with punishment pursuant to Article 15, UCMJ, 10 U.S.C. §815 (2000).  In a conversation with the first sergeant, Appellant learned that the Article 15 punishment was a scare tactic to keep the trainees "on that straight and narrow path until they graduated."  Taking advantage of this situation, Appellant asked each trainee for money in exchange for Appellant protecting them from Article 15 punishment, thereby permitting the trainees to graduate on time.  Two of the trainees paid Appellant amounts less than $100.00, and one trainee paid an amount more than $100.00.

Based on these facts, Appellant was charged in specifications 7 through 9 of Charge IV with bribery.  Each of these specifications alleged that Appellant "asked" for money

from a trainee "with the intent to have his action influenced with respect to an official matter in which the United States was and is interested, to wit: whether or not to recommend Article 15 punishment against [a certain trainee]." In contrast to the three other bribery offenses in specifications 2 through 4 of Charge IV, Appellant was not charged with actually receiving the money for these three bribes. Appellant pleaded guilty to these offenses by exceptions and substitutions - simply excepting greater dollar amounts for the bribe and substituting lesser figures. The focus of our concern is the issue before us relating to the providency of his pleas.

## Guilty Plea Developments

The initial portion of the providency inquiry is both simple and straightforward. The main task for the military judge was to address the factual predicate for each of Appellant's several offenses.

Before accepting Appellant's guilty pleas, the military judge advised Appellant that he would discuss with him the guilty plea and would not accept it unless Appellant understood its meaning and affect. Appellant indicated he understood the military judge's instructions. The judge continued stating that a "plea of guilty is equivalent to a conviction, and it's the strongest form of proof known to the law." The judge explained, "[you must admit every act or omission, and element, of the

offenses to which you have pled guilty, and that you are pleading guilty because you are, in fact, guilty." Appellant again indicated that he understood the military judge's directions.

Appellant was then placed under oath and the providency inquiry continued. First, the military judge established that the Appellant voluntarily entered into a Stipulation of Fact wherein Appellant admitted the truth of certain facts relating to his offenses. Appellant expressly acknowledged that the military judge could use the stipulation of fact to determine if Appellant was guilty of the offenses to which he had pleaded guilty. After both Appellant and the judge read the stipulation, the military judge admitted it into evidence.

Before reading the elements and charges to Appellant, the military judge explained what the term "elements" meant. He then told Appellant to ask himself, "First, is the element true; and Second, whether you wish to admit that it is true. After I list the elements for you, be prepared to talk to me about the offenses."

The military judge then informed Appellant that he would discuss the offenses "a bit out of order" and immediately focused the providency inquiry on Appellant's several bribery offenses. Starting with Appellant's offense of accepting a bribe to alter a trainee's score on the PFT, the judge then

explained in detail to Appellant the elements of the offense of bribery including the following: (1) that Appellant "wrongfully and unlawfully asked for and received" money from a trainee; (2) that at the time Appellant had official duties as drill sergeant for his unit; (3) that Appellant "asked for and received this sum with the intent to have [his] actions influenced with respect to altering the score" of the trainee on the PFT; and (4) that the PFT was an official matter in which the United States was and is interested in; and (5) that Appellant's conduct was to the prejudice of good order and discipline in the armed forces.

The military judge then repeated the elements of bribery for each of the other seven bribery specifications of Charge IV. Regarding the elements of specifications 5 through 9, the military judge erroneously advised Appellant both his actions and intent related to asking for and receiving a bribe. This statement was overbroad, as Appellant was charged in these offenses only with asking for the bribe. Regarding specifications 7 through 9, the military judge explained that the intent element of these offenses was "that you asked for and received this sum with intent to have your actions influenced with respect to whether or not to recommend Article 15 punishment against [a designated trainee]."

Next the judge explained the elements of the alleged orders violations in Charge II and finally the larceny offenses in Charge I. The providency inquiry did not address the offenses in Charge III and Charge IV of specification 1 as Appellant pleaded not guilty to these offenses that were eventually dismissed under the terms of Appellant's pretrial agreement.

At this point the military judge began to address the factual predicate for each bribery offense in Charge IV. Regarding the offenses that related to Appellant's accepting money to influence the PFT scores, Appellant explained, "I conjured up in my brain to come up with a plan to assist the soldier in the graduating, and at the same time, gain money for my own personal use." The military judge asked Appellant, "Was it your intent to insure that, for this sum of money, Private [W]'s score would reflect that he passed?" Appellant responded, "Yes, Sir." Appellant explained to the military judge that the other two offenses relating to his accepting money to influence the PFT scores were "pretty much the same circumstances" and the "same basic fact pattern."

The military judge turned next to the Appellant's bribery offenses that related to Appellant's accepting money to permit trainees to spend extra time with their families and girlfriends. Appellant explained that he "preyed" on trainees who desired to spend time with their families. He stated that

he both asked for and accepted money in exchange for granting the trainees extra liberty.

The judge next began an inquiry into Appellant's offenses at issue in this appeal. The following dialogue between the military judge and Appellant is relevant:

MJ: Let's do take a look at Specifications 7, 8 and 9 of Charge IV. Tell me why you're guilty of those offenses.

ACC: Pretty much the same reasons, sir, just different circumstances. In this particular instance, we're talking about Article 15 punishments. Each of the soldiers were threatened by the First Sergeant to receive an Article 15 punishment. It was just - with being so close to graduation, it was pretty much, after I later conversed with the First Sergeant - a scare tactic, to get them [to] stay on that straight and [n]arrow path until they graduated. After conversing with the First Sergeant and realizing that it was just a scare tactic, I took advantage of that situation also and took it a step further, as far as the scare tactic. I had them thinking that had they gotten an Article 15, it would have an effect on them not graduating from basic training. So at that moment, I took advantage of them and accepted money from them. I explained to them that if they paid me money, they wouldn't get the Article 15 that was promised to them by the First Sergeant, and they'd be allowed to go ahead on and graduate.

MJ: So you knew the First Sergeant was bluffing?

ACC: Yes, sir, I did.

MJ: You capitalized on the First Sergeant's bluff by indicating to these three soldiers that you could

influence whether they received this Article 15 or not?

ACC: Yes, sir, I did.

MJ: And you solicited money from them in each case?

10

ACC: Yes, sir, I did.

MJ:  How much money did you get from Specialist [C] for
     this recommendation of yours?

ACC: I don't know the exact sum, but it was over $100.00,
     sir.

MJ:  Did you have input into whether individuals got
     Article 15s or not?

ACC: Very much so, sir.

MJ:  The bottom line is that you told them you had input,
     correct?

ACC: Very much so, sir.  In that environment, I pretty
     much had say-so on whether or not they received an
     Article 15 or not, sir.

Appellant also admitted that he engaged in the two additional bribery offenses(alleged in specifications 8 and 9) by asking for and receiving less than $100.00 from two other trainees for misconduct related to this same situation.  The military judge then continued examining Appellant and elicited Appellant's admission that Article 15 punishment was a matter in which the United States had an official interest and his conduct was to the prejudice of good order and discipline or was of a nature to bring discredit upon the armed forces.

Summing up his actions in these bribery offenses, Appellant stated, "[I]t wasn't my duty to take their money from them.  It wasn't my duty to offer them bribes.  My duty was to train them, but I took it a step further and went into bribery and accepting money from them, sir."

United States v. McCrimmon, No. 02-0941/AR

Before this Court and the Court of Criminal Appeals,

Appellant asserts that the military judge erred in accepting his

guilty pleas to specifications 7 through 9 of Charge IV.  The

Court of Criminal Appeals summarily affirmed Appellant's

conviction.  Appellant argues that his pleas to those

specifications were improvident because the providency inquiry

demonstrated that he lacked the specific intent to have his

actions or decisions influenced with respect to an official

matter, Article 15 punishment.  The gravamen of Appellant's

argument is the following:

> While [A]ppellant did tell the military judge that he
> generally had input on whether soldiers got Article 15
> punishment, [A]ppellant stated that he told the three
> soldiers listed in specifications 7, 8, and 9 of Charge IV
> that he would specifically recommend against the Article 15
> the [first sergeant] threatened them with. . . .  Since he
> knew that the [first sergeant] had already decided there
> would be no Article 15, [A]ppellant knew there would be no
> opportunity for him to provide input.  Therefore, it was
> impossible for him to have possessed the requisite intent
> to have his actions influenced.

The Government argues that Appellant's pleas were provident

because it was Appellant's intent to influence his own action,

not the action of the first sergeant, that is necessary to

satisfy the elements of bribery.

## Discussion

### The Distinction Between Bribery and Graft

At the outset, it is important to appreciate the nature of

the criminal offense of bribery punishable under Article 134 and

12

second to distinguish it from the closely related offense of graft.

At common law the offense of bribery was "the giving of any valuable consideration or benefit to the holder of a public office, or to a person performing a public duty, or the acceptance thereof by such person, with the corrupt intention that he be influenced thereby in the discharge of his legal duty."  Rollin M. Perkins & Ronald N. Boyce, Criminal Law 527 (3d ed. 1982).  Simply stated, "bribery is the corrupt payment or receipt of a private price for official action."  Id. at 528.  The focus of the offense is to punish public corruption, and both the reciprocal acts of giving and receiving the bribe are punishable. Id. at 527-28.  While a common law misdemeanor, bribery "has very commonly been made a felony by statute."  Id. at 537.  The statutory plan to punish bribery and the scope of the punishable offense spring from the precise authority that defines the offense.

Bribery is not specifically enumerated in the UCMJ as a criminal offense, but is punishable under Article 134, UCMJ. See Manual for Courts-Martial, United States (2002 ed.)[hereinafter MCM], Part IV, para. 66.b.  From the language of this MCM provision, it is clear that "'bribery' is employed as a generic term to cover two

different offenses: (1) giving or offering a bribe, and

(2) receiving or soliciting a bribe."  Perkins & Boyce,

supra, at 537.  Paragraph 66.b. states the elements of the

two offenses of bribery as follows:

> (1)  Asking, accepting, or receiving.
>
> > (a)  That the accused wrongfully asked, accepted, or received a thing of value from a certain person or organization;
> > (b)  That the accused then occupied a certain official position or had certain official duties;
> > (c)  That the accused asked, accepted, or received this thing of value (with the intent to have the accused's decision or action influenced with respect to a certain matter);
> > (d)  That this certain matter was an official matter in which the United States was and is interested; and
> > (e)  That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
>
> (2)  Promising, offering, or giving.
>
> > (a)  That the accused wrongfully promised, offered, or gave a thing of value to a certain person;
> > (b)  That the person then occupied a certain official position or had certain official duties;
> > (c)  That this thing of value was promised, offered, or given (with the intent to influence the decision or action of this person);
> > (d)  That this matter was an official matter in which the United States was and is interested; and
> > (e)  That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Two of the important facets of this bribery offense are

that both the giving and receiving of a bribe are equally

punishable and that a specific corrupt intent to influence an

14

United States v. McCrimmon, No. 02-0941/AR

official action is required.  Focusing on the latter and reflecting the common law roots of this offense, the MCM, Part IV, para. 66.c. explains that "bribery requires an intent to influence or be influenced in an official matter [.]"  However, for these two separate bribery offenses of giving and receiving a bribe, there are different corrupt intents generally reflected in the following statement:

> On the part of the briber, this requires an intent to subject the official action of the recipient to the influence of personal gain or advantage rather than public welfare.  It does not require that the action sought to be induced should benefit the briber or should actually be detrimental to the public.  The social interest demands that official action should be free from improper motives of personal advantage, and an intent to subject the action to such motives is a corrupt intent.  If money is paid for such a purpose it is immaterial to the guilt of the briber whether the officer's official conduct was actually influenced or not.  On the part of the bribee, an intent to use the opportunity to perform a public duty as a means of acquiring an unlawful personal benefit or advantage, is a corrupt intent.  Hence it is no defense to a charge of receiving a bribe that the recipient believed the action requested would be for the best interest of the public, or that he had determined upon that course of action before the bribe was offered.  An officer who has determined upon a certain course of public action might change his mind if free from corrupting influences.  The social interest requires that there should be no such conflict.

Perkins & Boyce, supra, at 537.

While this general statement is helpful in understanding what constitutes corrupt intent, it is not definitive.  Where, as here, an element of an offense states expressly the specific intent, those words are controlling.  See United States v. Turkette, 452 U.S. 576 (1981); United States v. Guess, 48 M.J.

15

United States v. McCrimmon, No. 02-0941/AR

69 (C.A.A.F. 1998); United States v. Caballero, 37 M.J. 422 (C.M.A. 1993). Paragraph 66.b.(1)(c) states the specific intent required to prove bribery by the bribee - "with the intent to have the accused's decision or action influenced with respect to a certain matter." The plain words in this provision require that the bribee act with the intent to have the bribe impact on and actually influence the decision or actions of the bribee. This Court has long recognized the necessity of the intent element to establish the offense of bribery -- that the bribee must receive the money with intent to influence his official action. United States v. Bey, 4 C.M.A. 665, 16 C.M.R. 239 (1954)(explaining that bribery was not alleged because intent element was not stated, either directly or by necessary implication, and failure to allege intent element precludes conviction for that offense); United States v. Alexander, 3 C.M.A. 346, 12 C.M.R. 102 (1953)(stating that intent to influence official action is a necessary element of bribery).

This construction is consistent with the federal bribery statute that also requires a showing that the bribee had a specific corrupt intent to have his decisions or actions influenced by the bribe. See 18 U.S.C. 201(b)(2) (2000); United States v. Sun-Diamond Growers of California, 526 U.S. 398, 404 (1999)("Bribery requires intent 'to influence' an official act or 'to be influenced' in an official act."). Again, this does

16

not require that the bribe have this result, but the bribee must have the intent for the bribe to have the unlawful influence.

It is this essential specific intent element in bribery that distinguishes it from the offense of graft. "[I]n graft an intent improperly to influence official action need not be alleged or proved." United States v. Marshall, 18 C.M.A. 426, 428, 40 C.M.R. 138, 140 (1969). "Graft involves compensation for services performed in an official matter when no compensation is due." MCM, Part IV, para. 66.b. This Court has stated that "graft contemplates personal advantage or gain in a dishonest transaction in relation to public duties." Marshall, 18 C.M.A at 429, 40 C.M.R. at 141. We agree with the view, "It sometimes implies theft, corruption, dishonesty, fraud, or swindle, and always a want of integrity." United States v. Eslow, 1 M.J. 620, 622 (A.C.M.R. 1975).

The close similarity between the offenses of bribery and graft is evident from both being identified as offenses under Article 134. Paragraph 66(b) states the elements of two different graft offenses with elements identical to bribery with one significant exception. MCM, Part IV, para. 66.b.(1)-(2). Instead of the specific intent element in bribery, graft substitutes the following:

17

      (1)  Asking, accepting, or receiving

. . . .

        (c)  That the accused wrongfully asked, accepted, or received a thing of value (as compensation for or in recognition of services rendered, to be rendered, or both, by the accused in relation to a certain matter)[.]

. . . .

      (2)  Promising, offering, or giving

. . . .

        (c)  That this thing of value was promised, offered, or given (as compensation for or in recognition of services rendered, to be rendered, or both, by this person in relation to a certain matter)[.]

It is obvious that graft is a lesser included offense of bribery. Id. at para. 66.d.(1). Cases where this Court affirmed convictions of graft include: Marshall, 18 C.M.A. at 426, 40 C.M.R. at 138 (serviceman offered an administrative clerk money to make changes to finance records regarding the serviceman's leave); Bey, 4 C.M.A. at 665, 16 C.M.R. at 239 (platoon sergeant accepted money to issue a liberty pass to a trainee); Alexander, 3 C.M.A. at 346, 12 C.M.R. at 102 (driver of a government car accepted money to transport a woman).

Bribery has a greater maximum punishment(five years confinement)than the lesser offense of graft three years confinement). MCM, Part IV, para. 66.e. The President

United States v. McCrimmon, No. 02-0941/AR

increased the maximum punishment for bribery from three to five years "to reflect the greater seriousness of bribery which requires a specific intent to influence." Id. at Analysis of Punitive Articles A 23-18 at para. 66.e. compare MCM, Part IV, para. 66.e with, MCM (1969 ed.), Part IV, para. 127.c.(6).

It is therefore clear that for Appellant to be guilty of the offense of bribery, the record of trial must establish that Appellant had the specific intent to have his decision or action influenced with respect to a certain official matter. As Appellant pleaded guilty to the bribery offense, we evaluate this case in the context of his guilty plea.

The Providency of Appellant's Guilty Plea to Bribery

An accused does not have a constitutional right to plead guilty. See Santobello v. New York, 404 U.S. 257 (1971). As the Constitution guarantees only a right to plead not guilty, an accused has generally only "a right to offer a plea of guilty," United States v. Penister, 25 M.J. 148, 151 (C.M.A. 1987), and may not even do that for "an offense for which the death penalty may be adjudged," Article 45(b), UCMJ, 10 U.S.C. § 845 (2000).

Both a specific statute and case law establish the process to evaluate a voluntary and reliable guilty plea. See Article 45, UCMJ; United States v. Davenport, 9 M.J. 364 (C.M.A. 1980); United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

19

United States v. McCrimmon, No. 02-0941/AR

Before accepting a plea of guilty, the military judge must conduct a thorough inquiry and determine that the accused understands his plea, it is entered voluntarily, and the accused is in fact guilty. Davenport, 9 M.J. at 364; Care, 18 C.M.A. at 535, 40 C.M.R.at 247; Rule for Courts-Martial 910(c)-(e). Care requires that the military judge question the accused "about what he did or did not do, and what he intended." 18 C.M.A. at 541, 40 C.M.R. at 253.

A court shall not accept a plea of guilty where "an accused . . . . sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently. . . ." Article 45, UCMJ. "Unlike the civilian criminal justice system, Article 45(a) requires that, in a guilty-plea case, inconsistencies and apparent defenses must be resolved by the military judge or the guilty pleas must be rejected." United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F. 1996) (citing United States v. Jemmings, 1 M.J. 414, 418 (C.M.A. 1976); United States v. Dunbar, 20 C.M.A. 478, 143 C.M.R. 318 (1971)). "Mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea." Id. at 331 (citing United States v. Terry, 21 C.M.A. 442, 45 C.M.R. 216 (1972)).

However, this Court will not set aside a guilty plea on appeal unless there is a substantial basis in law and

20

fact for questioning the plea. United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991). Appreciating the tendency of persons accused of criminal offenses to rationalize their behavior, this Court permits the military judge "in a borderline case . . . [to] give weight to the defense evaluation of the evidence." United States v. Clark, 28 M.J. 401, 407 (C.M.A. 1989).

This Court in United States v. Bickley stated, "In examining the providency of a guilty plea, this Court has noted that 'the factual predicate is sufficiently established if the 'factual circumstances as revealed by the accused himself objectively support the plea. . . .'" 50 M.J. 93, 94 (C.A.A.F. 1999),(citing United States v. Faircloth, 45 M.J. 172, 174 (C.A.A.F. 1996)(quoting Davenport, 9 M.J. at 367). In upholding Appellant's plea as provident, the Court focused on the circumstance that Appellant "fully and freely admitted that his actions violated each of the elements of the offense charged." Id. at 94-95. We examine Appellant's guilty plea in light of this legal authority regarding guilty pleas.

In the present case, the military judge initially established the voluntariness of Appellant's pleas on the record by informing Appellant of his rights and the meaning of his pleas. The military judge informed Appellant that his guilty plea was "equivalent to a conviction, and it's the strongest

form of proof known to the law." He then instructed Appellant not to plead guilty unless he believed that he was, in fact, guilty.

Next, the military judge engaged Appellant in a detailed dialogue that allowed Appellant to establish the factual circumstances surrounding the bribery offense when he pleaded guilty. Importantly, the military judge expressly stated the intent element for each of the bribery offenses. The judge initially addressed the factual predicate for the first bribery offense, specification 2 of Charge IV (relating to appellant asking for and receiving money to ensure a trainee would pass the PFT). The judge pointedly asked Appellant, "Was it your intent to insure that, for this sum of money, Private [W]'s score would reflect that he passed?" Appellant's response was simply "Yes, Sir." This response established Appellant's intent was to protect the serviceman from failing the PFT and to guarantee the serviceman passed the test.

For all other bribery offenses Appellant reaffirmed his intent stating simply that these offenses were "[p]retty much the same circumstances," "the same basic fact pattern," and "[p]retty much the same reasons, sir, just different circumstances." Additionally, the detailed stipulation of fact explicitly established Appellant's intent to be influenced by each of the bribes. In the stipulation, Appellant repeatedly

22

states with regard to each of the offenses alleged in specifications 7 through 9 of Charge IV, that he asked for money from trainees "with the intent to have his decision influenced with respect to deciding whether to recommend Article 15 punishment against [the trainee]." Appellant's admission in this stipulation is another factor in concluding that his plea is provident. See United States v. Sweet, 42 M.J. 183 (C.A.A.F. 1995)(relying on stipulation to establish factual basis for guilty plea). Having established Appellant's pattern of intent to influence his decision and actions regarding several different servicemembers in different situations, it was not necessary that the military judge repeatedly inquire about Appellant's intent by additional questions. See United States v. Barton, 60 M.J. 62 (C.A.A.F. 2004)(evaluating sufficiency of the providency inquiry in context of entire record discussion).

We reject Appellant's assertion that his disclosure in the providency inquiry that he was taking advantage of the situation relating to the first sergeant's idle threat of Article 15 punishment is inconsistent with his guilty plea. The fact that Appellant knew that the first sergeant was bluffing is not dispositive because it is Appellant's intent, and not that of the first sergeant, which is at issue. Appellant admitted that he "pretty much had say-so" when recommending Article 15 punishment. Therefore, even if the first sergeant did not

23

intend to recommend Article 15 punishment, Appellant still had the power to recommend to the commander or the first sergeant that the punishment be imposed upon the trainees. The record establishes the offense of bribery because Appellant repeatedly admitted that he asked for money from his trainees with the intent to guarantee that the trainees not get Article 15 punishment and that they graduate on time. As the providency inquiry establishes Appellant's specific intent, Appellant's offense was bribery and not the lesser included offense of graft.

Importantly, in this case, Appellant was not prosecuted for larceny of the money the trainees paid Appellant. This Court has recognized that prosecution for both bribery and a larceny by falsely representing what the bribee intends to do may be problematic when the two offenses are rooted in mutually inconsistent findings. See United States v. Clark, 20 C.M.A. 140, 143, 42 C.M.R. 332, 335 (1970). The prosecution avoided that situation here and elected to proceed on the bribery offense alone. Having made that election, the Government in this case could rely on Appellant's guilty plea, as supported by the Care inquiry and the stipulation, to establish that Appellant asked for the payment of money from his trainees with specific intent to influence his decision or actions relating to his duties.

Also, Appellant's disclosure in the Stipulation of Fact of his uncharged misconduct (actually receiving money in every bribe) bolsters the adequacy of Appellant's guilty plea. This Court has stated, assuming no overreaching by the Government, evidence of uncharged misconduct, otherwise inadmissible evidence, may be presented to the court by stipulation and may be considered by the court. See United States v. Glazier, 26 M.J. 268 (C.M.A. 1988). There is no evidence of overreaching here, and it is clear that the parties availed themselves of this mechanism to present the facts relating to uncharged misconduct to the military judge.

As part of the negotiated guilty plea, Appellant agreed to the admission of a "Stipulation of Fact correctly describing the facts and circumstances surrounding the offense to which [he is] pleading guilty and any relevant aggravating and mitigating facts. [He] understand[s] the military judge may use the Stipulation of Fact to determine the providency of [his] plea . . . ." The stipulation further explicitly stated that Appellant received money in every bribe. Also the military judge elicited from Appellant cumulative admissions that he actually received payments of money in five of the bribery offenses. In these circumstances, the providency inquiry was not tainted by but instead strengthened by the record discussion of the uncharged misconduct.

In summary, Appellant's statements establish that Appellant asked for, and often actually received, the money from trainees with the intent that the payments would influence his decision to insure they did not receive Article 15 punishment. The record alternatively establishes that each of the trainees gave, and Appellant accepted, monetary bribes with the intent to influence the decision and action of Appellant regarding possible future punishment.

For these reasons, we hold that there is no substantial basis in law or fact for overturning Appellant's guilty pleas. The facts and Appellant's admissions are consistent with the guilty pleas. The military judge explained the meaning and effect of pleading guilty, as well as each element of the charged offenses and the meaning of the word "element." Appellant admitted he had the requisite intent, as well as the other elements of bribery, and sufficiently described the facts to support his plea. We hold that the Court of Criminal Appeals did not err in affirming the decision of the military judge to accept Appellant's guilty pleas as provident.

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. McCrimmon, No. 02-0941/AR

ERDMANN, Judge, with whom EFFRON, Judge, joins (dissenting):

I respectfully dissent. In my view the record is insufficient to sustain Staff Sergeant McCrimmon's guilty pleas to Specifications 7, 8 and 9 of Charge IV, which allege bribery by asking for money. Specifically, the record does not support the providence of these pleas to the element of the offense which requires McCrimmon to have accepted the money with the intent of having his decision or action influenced. See Manual for Courts-Martial, United States (2002 ed.) [MCM], Part IV, para. 66.b.(1)(c). The record, however, provides ample support to affirm a conviction for the crime of graft and also supports affirming McCrimmon's sentence.

I agree with the majority opinion that the focus of our decision in this case is whether this record establishes a factual basis for McCrimmon's plea to the specific intent element of bribery: "That the accused asked, accepted, or received this thing of value with the intent to have the accused's decision or action influenced with respect to a certain matter." Id. The intent to have one's actions or decisions influenced is a critical element of bribery by asking. United States v. Marshall, 18 C.M.A. 426, 428, 40 C.M.R. 138, 140 (1969)(holding bribery must

1

entail "a corrupt intent to influence official action");

see also United States v. Sun-Diamond Growers of Cal., 526

U.S. 398, 404 (1999)(noting the federal statutory

requirement that there be an "intent . . . 'to influence

any official act' (giver) or in return for 'being

influenced in the performance of any official act'

(recipient)"); United States v. Jennings, 160 F.3d 1006,

1014 (4th Cir. 1998).  This record reveals that McCrimmon

did not intend to have his actions influenced in any way.

He was simply capitalizing on a concrete situation that

already existed and he did not contemplate or take any

individual official action nor did he contemplate or take

steps to influence another's official action.

During his discussion of the offenses with the

military judge, McCrimmon acknowledged that as drill

sergeant he "pretty much had say-so" as to Article 15

punishment.  Despite this acknowledgment of general

influence over the Article 15, Uniform Code of Military

Justice [UCMJ], 10 U.S.C. § 815 (2000), decision-making

process, in this case McCrimmon never asserted that he

intended to exercise his own authority to make a

recommendation regarding imposition of punishment under

Article 15, UCMJ.  Instead, McCrimmon acknowledged to the

military judge that he was simply capitalizing on a

situation not of his own making and which required no action whatsoever on his part:

> After conversing with the First Sergeant and realizing that it was just a scare tactic, I took advantage of the situation also and took it a step further, as far as the scare tactic. I had them thinking that had they gotten an Article 15, it would have an effect on them not graduating from basic training. So at that moment, I took advantage of them and accepted money from them. I explained to them that if they paid me money, they wouldn't get the Article 15 that was promised to them by the First Sergeant, and they'd be allowed to go ahead on and graduate.

Any implied promise to influence the process was nothing more than a false pretense to get money from the three trainees involved.

In the stipulation of fact, McCrimmon did stipulate that he "asked for and received this sum, with the intent to have his decision influenced[.]" I am not persuaded, however, that this stipulation alone is sufficient to resolve the factual issue of McCrimmon's actual intent in this case. The stipulation is written as a virtual recitation of the elements of the offense and hardly seems reflective of actual facts. More importantly, however, the difference between the stipulation and McCrimmon's actual statements should have caused the military judge to conduct a more in-depth inquiry into the facts. See United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F. 1996).

3

If he could not resolve the inconsistency between the stipulation and the articulated facts, the military judge should have rejected the pleas.  United States v. Garcia, 44 M.J. 496, 498 (C.A.A.F. 1996), (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a)(1994)); see also Rule for Courts-Martial 910(e), (h)(2).  McCrimmon's sworn statement to the military judge is factually inadequate and the conflict with the stipulation of fact is unresolved.  These defects present a substantial basis in fact and law for questioning the providence of these pleas.  United States v. Russell, 50 M.J. 99, 100 (C.A.A.F. 1999); United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991).

In this case, the record supports a provident guilty plea only to the lesser-included offense of graft.  Graft is distinct from bribery in that graft requires no specific intent to have a decision or action influenced.  MCM, Part IV, para. 66.b.(1)(c).  McCrimmon's statements reveal that he asked for the money from the three trainees for services, although he had no intention of performing any service or taking any action whatsoever.

I would modify the findings of guilty to specifications 7, 8, and 9 of Charge IV to reflect only a finding of guilty to the lesser-included offense of graft in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000).

4

I would affirm the modified findings and the remaining findings of guilty.  I am convinced, however, that had the military judge found McCrimmon guilty of graft in these three specifications, he would have adjudged an identical sentence.  Therefore, I would affirm the sentence.