# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## First Lieutenant ADAM P. COHEN
### United States Air Force

## ACM 38472

## 30 April 2015

Sentence adjudged 17 July 2013 by GCM convened at McConnell Air Force Base, Kansas. Military Judge: J. Wesley Moore and Natalie D. Richardson (sitting alone).

Approved Sentence: Dismissal, confinement for 15 months, and a reprimand.

Appellate Counsel for the Appellant: Major Christopher D. James and Brian L. Mizer, Esquire.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Meredith L. Steer; Captain Collin F. Delaney; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A general court-martial composed of a military judge convicted the appellant, consistent with his pleas, of willfully disobeying a superior commissioned officer, violating a lawful general order, violating a lawful general regulation, making false official statements, conduct unbecoming an officer, wrongfully accessing protected computer systems without authorization, and fraternization, in violation of Articles 90,

92, 107, 133, and 134, UCMJ, 10 U.S.C. §§ 890, 892, 907, 933, 934. He was sentenced to a dismissal, confinement for 15 months, and a reprimand.[1] The convening authority approved the sentence as adjudged.

On appeal, the appellant contends the conditions of his post-trial confinement violated Article 55, UCMJ, 10 U.S.C. § 855, and the Eighth Amendment.[2] He also raises multiple issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), contending his guilty pleas should be set aside for several reasons. We find no error materially prejudicial to the substantial rights of the appellant occurred relative to the findings of guilt and we therefore affirm those findings. Because we order a post-trial hearing into the appellant's claim regarding the conditions of his post-trial confinement, we take no action on his sentence at this time.

*Background*

Through a stipulation of fact and his guilty plea inquiry, the appellant admitted the following facts were true.

The appellant met Captain (CPT) JB, a male active duty Army captain, via Facebook in the spring of 2011 while the two were deployed to Qatar and Iraq, respectively. They communicated regularly through Facebook, telephone calls, e-mail messages, and Skype. During these conversations they discovered they had a mutual acquaintance, Air Force Major (Maj) LB.

In October 2011, following their deployments, the appellant and CPT JB met in person for the first time. At that time, the appellant showed CPT JB text messages he had supposedly been receiving from Maj LB, including messages warning the appellant to "back off." These text messages were actually sent by the appellant to himself, posing as Maj LB. He did this by placing his own cellular phone number under the major's name in the contact area of his phone. Starting in 2011, the appellant engaged in text messages with himself in order to make it appear he was receiving the messages from the major.

In mid-October 2011, the appellant reported to the McConnell Air Force Base's Air Force Office of Special Investigations (AFOSI) detachment and Security Forces Investigations (SFOI) office that he was being harassed by an Air Force officer and an Army officer. He described receiving harassing messages that were sexually explicit in

---

[1] The appellant entered into a pretrial agreement that capped his confinement at 15 months. As part of this pretrial agreement, the government dismissed two specifications of false official statement, four specifications of conduct unbecoming an officer, three specifications of wrongfully accessing protected computer systems without authorization, one specification of engaging in a scheme to defraud, one specification of fraternization, and one specification of indecent conduct.
[2] U.S. CONST. amend VIII.

nature. He stated he did not want to file a report but requested SFOI assistance in stopping the harassment.

In mid-November 2011, the appellant reported to his squadron first sergeant that he was receiving harassing text messages from Maj LB, who was assigned to a different base. The appellant showed the first sergeant taunting messages on his cellular phone that appeared to be from the major. These messages were introduced into evidence at trial. In these messages, the sender was informing the appellant that the sender's "ex" was not interested in the appellant, and called the appellant a "looser" [sic]. After the appellant's first sergeant forwarded the messages to the first sergeant for the major's squadron, the major was given a no-contact order. The appellant's statement was false because the Air Force major had not sent these text messages. The appellant pled guilty to making a false official statement to his squadron's first sergeant.

While on temporary duty at another base in December 2011, the appellant made a formal report to SFOI investigators, detailing specific harassment by Maj LB and CPT JB. He reported that in late November 2011, CPT JB had sent an e-mail to the appellant's parents but the appellant was able to intercept it. He also reported that an e-mail including nude pictures of the appellant was sent on 4 December 2011 from a Yahoo e-mail address, but that he was not sure which officer had sent it. The e-mail asked the addressees if they knew the individual in the photographs, referred to him in derogatory terms and threatened to "beat the hell out of [him]." In fact, the appellant had sent the e-mail and its attachments from CPT JB's account without his consent, sending it to multiple addressees he found in CPT JB's electronic address book. At trial, he admitted that his actions in sending this e-mail constituted conduct unbecoming of an officer.

The appellant also pled guilty to accessing CPT JB's Facebook page without his consent on multiple occasions between March 2011 and April 2012 and using that access to read the messages being sent between CPT JB and Maj LB. Similarly, he admitted accessing Maj LB's e-mail account on at least two occasions between October 2011 and April 2012 and reading Maj LB's e-mails without consent. For this conduct, the appellant pled guilty to two specifications of engaging in conduct that was service discrediting and prejudicial to good order and discipline.

Over the next several months, the appellant continued to report that he was being harassed by the two men. As an example, he provided investigators with a 6 December 2011 e-mail that purported to be from the appellant and said "stalking is fun." A later investigation revealed this e-mail was sent by CPT JB from his work station. The appellant also provided investigators with an e-mail that stated: "LT, you're in hotter water! FYSA: We will keep filing charges against you until you stop all investigations. There are four of us and one of you…who do you think their [sic] going

to believe???" Under oath at the Article 32, UCMJ, 10 U.S.C. § 832, investigation, CPT JB denied sending an e-mail with this content, but later admitted that he did send it.

In response to a request by an investigator, the appellant provided an e-mail to SFOI on 7 February 2012 containing a detailed timeline regarding the harassment he was experiencing. Attached to the e-mail were four Microsoft Word documents that included header information for four e-mails that the appellant claimed had been sent out from CPT JB's e-mail address. The e-mails, one of which was the "beat the hell out of [him]" e-mail referenced above, each indicated the sender was looking for the appellant and attached his photograph. An analysis of the appellant's computer revealed that the internet protocol addresses found in the header information was false. The appellant admitted he had changed these addresses in an effort to deceive the investigator about who sent the e-mails. He pled guilty to four specifications of making a false official statement to the SFOI investigator by changing the internet protocol address for each e-mail.

The appellant also provided another e-mail to the investigator in February 2012. In that e-mail, the sender taunted the appellant, called him mentally ill, encouraged him to commit suicide, and described him with a religious slur. The appellant told the investigator that e-mail had been sent to him on 5 February 2012 from Maj LB's personal e-mail account using an internet protocol address associated with a coffee shop in Florida near where the major was located. This statement was false as the appellant had actually received this taunting message via text message, not e-mail. For this, the appellant pled guilty to making a false official statement.

The appellant's squadron commander became aware of his allegations of harassment in October or November 2011. Several times from December 2011 to February 2012, the commander ordered the appellant to "stop conducting your own investigation" or words to that effect, including in an e-mail dated 15 February 2012. This order was given after SFOI reported the appellant's constant involvement in the case was interfering with their investigation. On 8 March 2012, however, the appellant contacted the manager of a coffee shop, told him he was conducting an internal investigation into threats and a violation of a no-contact order, and requested video footage. The employee declined to provide the footage without a formal request from law enforcement, and the appellant provided him with contact information for AFOSI and SFOI. The appellant pled guilty to violating his commander's lawful order by contacting the coffee shop employee and admitted he should have given the information to investigators and let them contact the coffee shop as part of their investigative steps.

A forensic examination of the appellant's computer after he returned from a deployment to Qatar in April 2012 revealed multiple pornographic images. Possession of such material in Qatar violated a general order issued by the Commander of the United States Air Force Central Command. The appellant pled guilty to violating this order.

The appellant also pled guilty to engaging in inappropriate relationships with three active duty enlisted members, one of whom was an Army specialist, between 2009 and 2012. For his conduct with the two Air Force enlisted members, the appellant pled guilty to fraternization for communicating on a first name basis, socializing together, and, for one of the enlisted Airmen, engaging in sexual activity. For having a sexual relationship with the specialist, the appellant pled guilty to violating an Air Force instruction that prohibits such conduct. He also pled guilty to conduct unbecoming an officer for soliciting the soldier to access the Skype account of CPT JB and pose as the captain to his online contacts.

*Grostefon Issues Regarding the Findings*

Pursuant to *United States v. Grostefon*, the appellant raises a variety of issues which he contends warrant setting aside most of the findings of guilty in his case. In support of those claims, the appellant has submitted several declarations and other documents and asked us to consider those in evaluating his guilt.

1. *Post-trial Claims of Innocence*

In his declarations, the appellant contends that information he has received or reviewed since his court-martial has now caused him to believe he is not guilty of many of the offenses he pled guilty to or has led him to believe he should not have pleaded guilty. For example, in his guilty plea inquiry, he admitted changing the internet protocol address of four e-mails before forwarding them to an investigator, but he now claims it is possible CPT JB forwarded him already falsified addresses, which the appellant unknowingly passed on to the investigator. Also, despite admitting at trial that he used CPT JB'S e-mail account to send out the December 2011 e-mail that included nude photographs of the appellant, the appellant now appears to be alleging that CPT JB actually did send this e-mail. He also makes other similar claims regarding several of his other guilty pleas in the case.

"We will not reject a guilty plea on appeal unless there is 'a "substantial basis" in law and fact for questioning the guilty plea.'" *United States v. Glenn*, 66 M.J. 64, 66 (C.A.A.F. 2008) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). "When an accused pleads guilty, there is no requirement that the government establish the factual predicate for the plea." *United States v. Ferguson*, 68 M.J. 431, 434 (C.A.A.F. 2010). Because a guilty plea is an admission of all the elements of a criminal charge, the trial judge must explain each element of the offense and ensure the appellant's plea results in a sufficient factual basis for each element exists. *United States v. Barton*, 60 M.J. 62, 64 (C.A.A.F. 2004); *see also United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996). This factual predicate is sufficiently established if "the factual circumstances revealed by the accused himself objectively support that plea." *United*

*States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980). The mere possibility of a defense does not itself necessarily merit the rejection of an otherwise provident plea. *United States v. Clark*, 28 M.J. 401, 407 (C.M.A. 1989).

As a result, when evaluating a guilty plea on appeal, "the issue must be analyzed in terms of providence of his plea not sufficiency of the evidence." *Faircloth*, 45 M.J. at 174 (citing Article 45a, UCMJ, 10 U.S.C. § 845(a)). "If the inquiry of the accused indicates not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea," the plea is provident. *Davenport*, 9 M.J. at 367. In evaluating the providence of that plea on appeal, appellate courts will not consider evidence from outside the record as the "providence of a tendered plea of guilty is a matter to be established one way or the other at trial." *Id*; *United States v. Holt*, 58 M.J. 227, 232 (C.A.A.F. 2003) (noting that Article 66(c), UCMJ, 10 U.S.C. § 866, limits the service courts to a review of the facts, testimony, and evidence presented at trial and precludes use of extra-record matters when making determinations of guilt or innocence). The guilty plea inquiry serves as a substitute for a contested trial and the record is less likely to have completely developed facts. *Barton*, 60 M.J. at 65. We, and the appellant, cannot use the benefit of appellate hindsight to "identify questions unasked or be tempted to look for the factual development that only a contested trial might contain." *Id.*

Here, the military judge established the voluntariness of the appellant's pleas by informing him of his rights and the meaning of a guilty plea, including that a guilty plea was equivalent to a conviction and was the strongest form of proof under the law. *See United States v. McCrimmon*, 60 M.J. 145, 153 (C.A.A.F. 2004). She explicitly told the appellant that he should not plead guilty unless he believed he was, in fact, guilty. She warned him that he was giving up the right to have his guilt decided based on the evidence the government and defense would present at trial, his right to be confronted by and cross-examine the witnesses in the case, and his right to have a panel determine his guilt. After those warnings, the appellant fully and freely admitted that his actions violated each of the elements of the charged offenses.

The appellant's counseled, voluntary, and intelligent pleas of guilty are admissions of factual guilt so reliable that they "quite validly remove[] the issue of factual guilt from the case." *See United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009) (quoting *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975)) (emphasis omitted); *see also United States v. Wilson*, 44 M.J. 223, 225 (C.A.A.F. 1996) (finding "neither post-trial speculation nor post-trial affidavits as to putative defenses are a proper basis to upset guilty pleas prefaced by a providence inquiry appearing to be regular on its face"). During a thorough plea colloquy, the appellant admitted, while under oath and penalty of perjury, to sufficient facts to warrant the finding of guilty to all specifications in the case.

Furthermore, the stipulation of fact contained facts that also support the finding of guilty. Prior to this stipulation being admitted into evidence, the appellant told the military judge that (1) he understood the stipulation of fact contained the uncontradicted facts of the case; (2) he had read the stipulation of fact thoroughly before signing it, along with the attachments referenced within it;[3] (3) he agreed the contents of the stipulation of fact were true and correct to the best of his knowledge and belief; and (4) there was nothing in the stipulation that he did not wish to admit was true.

We decline to speculate post-trial as to the existence of facts which might invalidate the appellant's pleas of guilty. *See United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995). In short, there is no substantial basis in law or fact for questioning any of the appellant's guilty pleas.

Only one of the appellant's claims in this regard warrants discussion. The appellant was charged with violating a lawful general regulation, Air Force Instruction 36-3909, *Professional and Unprofessional Relationships* (1 May 1999), by wrongfully engaging in sexual relations with an active duty Army specialist between 1 March 2009 and 31 March 2012. He was also charged with fraternizing with the same Army specialist during that time period by maintaining a first name basis relationship, maintaining regular personal contact with him, and allowing him to stay at the appellant's home. During the guilty plea inquiry, the appellant told the military judge he entered active duty on 3 March 2009 upon entry into officer training school. He also stated he was commissioned as a second lieutenant upon graduation on 2 June 2009. The appellant claims he was in enlisted status during the time he was in officer training school and, therefore, the Air Force Instruction and the prohibition on fraternization did not apply to him.

Assuming arguendo the appellant is correct that he was not considered an officer under the Air Force Instruction or for fraternization purposes while he was in training status, he was an officer as of 2 June 2009. In his guilty plea inquiry, the appellant admitted to engaging in this behavior with the Army specialist during the charged time period, which ran from 3 March 2009 through 2012. In the stipulation of fact, the appellant admitted to meeting him in 2009 in San Antonio and engaging in sexual activity over a week-long period while the Army specialist was on leave. He also engaged in further sexual activity with the specialist in December 2009 while the specialist was staying at the appellant's home in San Antonio, and continued to maintain personal contact with the specialist through October 2011. This makes clear that the appellant engaged in the prohibited conduct after 2 June 2009 and we find no substantial basis in law or fact to question the appellant's guilty plea.

---

[3] The appellant stated he had not reviewed the disc containing the pornography found on his computer but stated he was willing to accept that it contained the items referenced in the stipulation of fact.

*Exculpatory Information Withheld by the Government*

The appellant makes several claims that the government improperly withheld exculpatory and material information from the defense prior to trial. On this basis, he asks that we set aside his guilty plea to multiple specifications. Only two of the appellant's claims warrant discussion.

The appellant's primary claim is that the government was in possession of a recording that purportedly contains audio of CPT JB admitting to sending "all the emails." The appellant contends that this "confession" shows that CPT JB is the person who sent the e-mails that the appellant pled guilty to sending. In his appellate submissions, the appellant states a copy of this recording was sent to his voicemail in February 2013, but based on advice from law enforcement, he had arranged for all calls from CPT JB to be placed directly in an inactive e-mail account which the appellant did not check until he was released from confinement. He further states that an individual at the military justice division of the Air Force Legal Operations Agency told him during the Summer of 2014 that the convening authority and/or the base legal office were in possession of this recording but the appellant could not receive a copy under the Freedom of Information Act. Based on this, he argues the government was in possession of this recording prior to his trial and violated its discovery obligations by not disclosing its existence to the defense and the military judge prior to or as the appellant was pleading guilty. After considering the totality of the information presented on this issue and within the record of trial, we do not find that this evidence was ever in the possession of the government. In his declaration, the appellant admits this recording was delivered to him and remained unretrieved until he was released from confinement. Under these circumstances, the government could not have been in possession of it before the appellant was.

The appellant also contends the government improperly withheld one or more e-mails from an SFOI investigator in March 2012 where the investigator portrayed himself as an officer and "ordered" the appellant to cease his own investigation or he would be charged under Article 92, UCMJ. The appellant argues this e-mail would have been exculpatory because the order was unlawful due to the investigator's enlisted status. He also now contends that he was confused by the orders given by the investigator versus those given by his commander due to the similarity of their last names, and that he would not have pled guilty if this document had been turned over. We find this claim improbable and this argument irrelevant. The appellant was charged with violating a lawful order from his commander. He admitted under oath that his commander told him on multiple occasions to stop conducting his own investigation and that he failed to do so. We find no substantial basis in law or fact to question the appellant's guilty plea. We similarly dispose of his claim that the government failed to turn over an e-mail from his commander which the appellant now contends shows he was authorized to continue

investigating the situation.  The appellant's guilty plea makes clear this belated claim is untrue.

### 2. *Failure to Receive Unredacted Copies of Evidence*

The appellant claims his due process and Sixth Amendment[4] rights were violated by the government's failure to provide him an unredacted copy of the report of the SFOI investigation and the Article 32, UCMJ, report.  Before serving the appellant with his copies of these documents, the government redacted certain personally identifying information regarding the victims and witnesses in the case.  However, the record makes clear that the appellant's defense counsel received unredacted copies of these materials.  Furthermore, despite filing multiple motions prior to trial, the defense did not raise this issue at trial.  In light of this, we find the appellant's argument is without merit.

### 4. *Alleged Post-trial Statements by CPT JB*

The appellant claims that since his release from confinement, he has become aware of postings on a public website where he claims CPT JB admitted that he flew to Kansas City on 19 December 2011 "to discuss [with investigators] options on how to best proceed with [the appellant's] investigation."  The appellant now states that if he had known prior to his trial that CPT JB had done this, he would not have pled guilty or agreed in his pretrial agreement to waive his right to pursue a motion to suppress.  He further contends that this information demonstrates the government violated his Article 31, UCMJ, 10 U.S.C. § 831, rights by not giving him a rights advisement until several months later, and that investigators engaged in an unlawful search and seizure.

Applying the case law discussed above, we find this information raises no substantial basis in law or fact for questioning any of the appellant's guilty pleas.  Furthermore, the issue of when the investigators considered the appellant a suspect (as opposed to a victim) was already present in this case prior to trial.  By choosing to plead guilty, the appellant waived further inquiry into this matter, regardless of his pretrial agreement, as was explained to him by the military judge.  *See* Mil. R. Evid. 304(d)(5) ("[A] plea of guilty to an offense that results in a finding of guilty waives all privileges against self-incrimination and all motions and objections . . . with respect to that offense.").  "When a set of facts is conclusively established and judicially admitted by an accused in his plea of guilty, there is no need for the Government to introduce at trial any evidence obtained through search and seizure."  *United States v. Tarleton*, 47 M.J. 170, 172 (C.A.A.F. 1997).  There would be no legal or practical purpose served by an appellate review of the legality of certain behavior by investigators that produced evidence not introduced by the government at trial because the accused plead guilty.  *See Id.*

---

[4] U.S. CONST. amend VI.

*Post-Trial Processing*

Eight days after the convening authority had taken action in the case, the appellant's trial defense counsel submitted a memorandum to the convening authority raising certain confinement issues (discussed below) and adding a new claim that one of the victim impact statements provided to him with the original staff judge advocate's recommendation contained a factual error. The appellant, through counsel, asserts that the captain's letter contained a false statement when he claimed he was experiencing problems due to the appellant's creation of a YouTube video by manipulating voicemails the captain had left for another individual. The defense pointed out to the convening authority that CPT JB had admitted at the Article 32, UMCJ, hearing that the video was created from a message he left for the appellant. The staff judge advocate advised the convening authority that he could rescind and replace his prior action in light of this new information, but recommended he not do so. The convening authority followed the staff judge advocate's advice.

The appellant argues he is entitled to new post-trial processing because the convening authority chose not to modify his initial action. We do not consider this an issue of improper post-trial processing. After being informed of the allegation that CPT JB had been inaccurate in one portion of his victim impact letter, the convening authority elected to continue with his initial decision. That was a matter well within his discretion.

*Conditions of Post-Trial Confinement*

Through several declarations supported by multiple documents, including confinement and medical records, the appellant contends the government violated Article 55, UCMJ, 10 U.S.C. § 855, and the Eighth Amendment when he was denied access to post-traumatic stress disorder treatment while in confinement. He also alleges the government violated Article 55, UCMJ, by requiring him to take a sex offender education course despite him being a victim of sexual assault. Although contesting most of the facts alleged by the appellant, the government did not submit any documents in response to these claims. Instead, the government argues the appellant received adequate treatment for any such disorder and he failed to present evidence that he had filed an appropriate complaint pursuant to Article 138, UCMJ, 10 U.S.C. § 938.

Given the allegations made by the appellant and the evidence he has presented to support them, we conclude a fact-finding hearing is required in order to resolve the factual dispute regarding those allegations. *See United States v. Singleton*, 60 M.J. 409, 410 (C.A.A.F. 2005) (applying the *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), standards to determine the necessity of a fact-finding hearing following a "post-trial, collateral, affidavit-based claim[]").

*Conclusion*

The findings of guilt are affirmed. In accordance with the order issued by this court contemporaneously with this decision, the case is returned to the Judge Advocate General of the Air Force for remand to an appropriate convening authority to order a hearing pursuant to *United States v. Dubay*, 37 C.M.R. 411 (C.M.A. 1967), to make findings of fact and conclusions of law related to the matter of the appellant's treatment in the confinement facility. At the conclusion of the *Dubay* hearing, the record will be returned to this court for further review under Article 66(c), UCMJ.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

ACM 38472