# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist RILEY W. COLLIER**
**United States Army, Appellant**

ARMY 20160447

Headquarters, Fort Carson
Lanny J. Acosta, Military Judge
Colonel Gregg A. Engler, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief); Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (Motion for Reconsideration).

For Appellee: Colonel Mark H. Sydenham, JA; Major Cormac M. Smith, JA; Major Ian M. Guy, JA (on brief).

8 November 2017

-----------------------------------------------------------------
MEMORANDUM OPINION ON RECONSIDERATION
-----------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

On 2 October 2017, we granted appellant's timely motion to reconsider our earlier decision in which we affirmed the findings and sentence. *See United States v. Collier*, ARMY 20160447, 2017 CCA LEXIS 528 (Army Ct. Crim. App. 3 Aug. 2017) (summ. disp.). Upon reconsideration, we do not find a *substantial* basis in law and fact to question appellant's plea. Accordingly, we again affirm the findings and sentence.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of violating a lawful general regulation[1]

---

[1] Appellant was charged with bringing a concealed, loaded, semi-automatic pistol and a switchblade knife onto post in violation of local general regulations. When

(continued . . .)

and four specifications of obtaining services under false pretenses, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge and 120 days of confinement.

This case is again before us for review pursuant to Article 66, UCMJ. Appellant's sole assignment of error and the basis for his request for reconsideration is that appellant cannot be guilty of theft of services because "the services had no value." We first address what is a "service" for purposes of the Article 134, UCMJ, offense of theft of services. We conclude that a service is the act of doing something useful for a person in exchange for consideration. We then determine that while there may be a basis in fact to question the providence of appellant's plea, it is not a substantial basis.

## BACKGROUND

This case starts with an unusual charging decision by the government. To summarize, appellant used his duty position to obtain the names and social security numbers from other soldiers' leave forms. Appellant used the personal data to apply for credit cards. For this conduct the government charged appellant with theft of services, a violation of Article 134, UCMJ. The "service" stolen in this case was a "line of credit."

The government did not charge, by way of example, attempted larceny or identity theft. *See* UCMJ art. 121; 18 U.S.C. § 1028.

## DISCUSSION

*A. Is a line of credit a service that can be stolen?*

Appellant pleaded guilty to obtaining through false pretenses the service of a "line of credit." We will try to dissect what exactly this means.

We begin by discussing that appellant was *not* charged with stealing. First, appellant clearly was not charged with stealing any services in *using* the line of credit. Appellant never admitted to using the credit cards.

Second, appellant was not charged with stealing the service of *requesting* or *applying* for a line of credit. From the record it appears that applying for credit cards was a service that was free and open to everyone. Appellant correctly cites our previous decision in *United States v. Sierra*, 62 M.J. 539 (Army Ct. Crim. App.

_____

(. . . continued)
appellant stated that he had brought the pistol onto post only because he forgot it was in his pocket, the military judge excepted out the relevant language and convicted him only of the switchblade offense.

2

2005), for the proposition that you cannot steal services that have no value. However, appellant was not charged with stealing the service of "applying" for a line of credit.

Rather, appellant was charged with obtaining through false pretenses a line of credit. That is, the existence and provision of the line of credit is the "service."

This raises what appears to be a question of first impression. Is a company that provides the *opportunity* to draw down on a line of credit providing a "service" under Article 134, UCMJ? The parties did not point us to any case that was directly on point. Given the unusual charging decision that was not surprising. Our own research also was not fruitful.

The Manual for Courts-Martial does not define the term "service." *See Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 78. Black's Law Dictionary defines a service as "[t]he act of doing something useful for a person or company, usu[ally] for a fee." *Service, Black's Law Dictionary* (9th ed. 2009) [hereinafter *Black's*]. A "fee" is similarly defined as a "charge for labor or services. . . ." *Fee, Black's*. A "charge" is a "[p]rice, cost, or expense." *Charge, Black's*. "Price" is likewise defined as the "amount of money or other consideration asked for or given in exchange for something else." *Price, Black's*. And finally, "consideration" is "something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee." *Consideration, Black's*. Accordingly, a service is the act of doing something useful for a person or corporation in exchange for consideration.[2] This definition is as useful as any and we adopt it. With that definition in mind, we next ask whether the line of credit in this case is a service.

### 1. Is a line of credit "useful?"

Certainly, both individuals and corporations view the ability to draw down on a line of credit to be something "useful." The ability to use credit allows persons to acquire goods and services, to smooth out financial disruptions, and respond to unexpected or emergent situations. A person who holds a credit card for emergencies likely views the credit card issuer as providing something of value even if the card is never used. Perhaps similarly, an insurance policy may never be used, but that does not mean it has no value to the policy holder.

### 2. Was the line of credit provided in exchange for consideration?

Whether the service in question is provided in exchange for consideration is the harder question. Credit card issuers charge fees to both the card holder and to

---

[2] Theft of services does not include the theft of goods or currency. *MCM*, pt. IV, ¶ 78.c.

merchants who accept the card. An "interchange" fee is a percentage of the transaction between a merchant and the card holder and is charged to the merchant. Fees directly charged to customers include late payment fees; over limit fees; payment processing (e.g. telephone payment) fee; cash advance fees; foreign currency transaction fees; and membership fees.[3]

For purposes of our analysis here, a company that issues a credit card can expect to receive three different types of fees. First, there is the expectation of future fees charged to merchants whenever the card is used. Second, there is the expectation of future fees charged to the card holder based on the card holder's actions (e.g. not paying an outstanding balance on time). Finally, there is the "membership" fee that is charged whether the card is used or not.

Of these three categories, only the last one would apply to a card that is never used for purchases. Membership fees are incurred on a periodic basis (e.g. annually) and occur regardless of whether the card is used. It would appear many if not most credit cards do not have membership fees. CFPB, CARD Act Report at 24-25. However, the incidence of cards with membership fees may be rising. "The percentage increases [in the number of credit card accounts with membership fees] were largest for accounts with deep subprime credit scores and increased more modestly, although still significantly, of the core subprime and prime segments [of the market]." *Id.* at 26.

We conclude that the lines of credit associated with credit cards are provided in exchange for consideration. That is, they are a "service." While the consideration may be the promise to pay a future fee or it may be a membership fee due immediately, the provision of a line of credit is not "free."

We turn next to whether appellant's colloquy with the military judge adequately admitted that this is the offense he committed.

---

[3] "[I]t is important to recognize that the cost of credit has many components. Consumers who utilize a credit card may pay for that credit in a number of different ways. Consumers may be charged an annual (or monthly) fee. They may incur penalty fees if they violate the account terms, most commonly by making a late payment or a transaction that exceeds his or her credit limit. They may be charged a variety of other fees such as cash advance fees, balance transfer fees, or foreign transaction fees. Finally, consumers may pay interest charges." Consumer Financial Protection Bureau [hereinafter CFPB], CARD Act Report 1, 18 (1 Oct. 2013), http://files.consumerfinance.gov/f/201309_cfpb_card-act-report.pdf; *see generally* Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act"), Pub. L. No. 111-24, 123 Stat. 1734 (2009).

*B. Is there a substantial basis in fact to question the providence of appellant's plea?*

During the providence inquiry appellant admitted that a line of credit is a service, that he wrongfully obtained the lines of credit through false pretenses, and further admitted the value of each of the lines of credit.

For each offense appellant admitted he used other people's identity (i.e. "false pretenses"), to obtain the service of a line of credit. In each instance he admitted that he had actually received the line of credit services when he received notice that his electronic credit application had been approved. Finally, as to each specification appellant admitted the value of the service he had stolen.[4]

Appellant admitted at trial that he applied for and obtained credit cards in other soldiers' names because he was in financial distress and that he did this for his "financial benefit." When asked what service he had wrongfully obtained appellant responded, with regard to one victim, "It was a line of credit in [NH's] name for over $500." Appellant further admitted that he had received confirmation from Capital One that his fraudulent applications for credit cards had been approved.

The dissent points to an exchange in appellant's unsworn statement as being inconsistent with the admissions made by appellant during his guilty plea. Specifically, appellant stated that he threw away the envelopes containing the credit cards before he even opened them. However, appellant's unsworn statement does not contradict his prior statement that he obtained under false pretenses the lines of credit when they were electronically approved.

Admittedly, appellant's responses during the *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), inquiry and his unsworn statement sought to advance two different purposes. The first set of statements was oriented towards

---

[4] Appellant admitted that the value of each line of credit was the amount of the line of credit. Value is a question of fact. *MCM*, pt. IV, ¶ 46.c.(1)(g)(i). Guilty pleas often involve undeveloped facts. *United States v. Jordan*, 57 M.J. 236, 238-39 (C.A.A.F. 2002) ("By its nature, a guilty plea case is less likely to have developed facts . . . . Those facts that are part of the military judge's providence inquiry are not subject to the test of adversarial process. We are similarly mindful that a decision to plead guilty may include a conscious choice by an accused to limit the nature of the information that would otherwise be disclosed in an adversarial contest."). It is possible that in a contested case the value of the service of providing a line of credit would not be the value of the line of credit. To use our previous analogy, the value of having an insurance policy in case of some emergency is not the maximum possible payout of the insurance policy. However, the military judge was not required to hear facts and determine the actual market value or other means of valuing the lines of credit. As long as the service had value as a matter of law, appellant's admissions of their factual value is sufficient.

convincing the military judge that appellant was guilty so that appellant could get the benefit of the bargain he had struck with the government. By contrast, appellant's unsworn statement was aimed at mitigating his offenses so that he could receive a light sentence. While perhaps aimed at cross purposes, the statements were not in direct conflict. Our superior court has "[a]ppreciat[ed] the tendency of persons accused of criminal offenses to rationalize their behavior . . . ." *United States v. McCrimmon*, 60 M.J. 145, 152 (C.A.A.F. 2004); *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991) (rejecting "'the mere possibility of conflict' standard for the more realistic 'substantial basis' test").

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge FEBBO concurs.

WOLFE, Judge, dissenting:

As I find a substantial basis in fact to question the providence of appellant's plea I respectfully dissent.

During sentencing the defense counsel elicited the following from appellant during his unsworn statement.

> Q. Okay. Did you do anything at that time to try to minimize the impact this would have on those Soldiers whose information you'd used?
>
> A. Yes. As soon as I got the envelopes with the cards from Capital One, I threw them away, and ---
>
> Q. Did you even open the envelopes?
>
> A. No, ma'am. I didn't open them or activate them or anything.
>
> Q. Okay.
>
> A. Just because I didn't want it—because I know that I could have affected the individuals to a higher extent, and I didn't want to put them in financial hardships like my family was.

Appellant's unsworn statement raised several concerns.

6

First, it is unclear whether appellant ever obtained the services he had pleaded guilty to stealing. Appellant denied even opening the envelopes. It is therefore unclear how appellant knew the contents of the envelope. Appellant's unsworn statement raised the issue of whether he knew, in fact, that the credit applications appellant had fraudulently applied for had been approved.

Now, as the majority points out, appellant had previously admitted he received notice that the lines of credit had been electronically approved. But this just moves the question to what "activating" the lines of credit meant. Had appellant already obtained the lines of credit but merely did not activate the plastic card? Or, was appellant's activation of the card necessary to gain control over the line of credit and therefore necessary to "obtain" it? This inconsistency was not resolved by the military judge.

Second, and perhaps more importantly, I am concerned whether this accused (and likely most accuseds charged in this unusual manner) truly understood the charges to which he was pleading guilty. The extensive appellate practice and deliberative process it has taken just to understand what appellant was charged with (and whether it constitutes a crime) gives me pause.

In *United States v. Joseph*, Judge Wiss described the role of a court when the facts of the misconduct do not squarely fit the offense charged.

> [W]hen the Government comes before a court of law and tries to fit a round peg of conduct into a square hole of a punitive statutory provision, it is not the proper function of the court to reshape the hole so that it will accept the peg and, in the process, distort the hole's character. Rather, it is the proper limit of the court's function to consider whether the hole—politically determined— already is large enough so that the peg fits within it.

37 M.J. 392, 402 (C.M.A. 1993) (Wiss, J., concurring in the result). Charging theft of services for appellant's conduct (instead of identity theft or attempted larceny) has unnecessarily created appellate litigation.

To continue Judge Wiss's analogy, I conclude the peg *could* fit. A round peg does fit in a square hole provided the hole is big enough. However, in the context of a guilty plea, I find that appellant did not adequately admit facts necessary to show that the peg fit. The gallimaufry of issues presented by the charging decision in this case also necessitated that these same issues be explained to the accused while entering his plea. The more complex, novel or convoluted the charging decision, the more carefully the elements and defenses must be explained to the accused.

7

Accordingly, I would set aside appellant's convictions for stealing services and authorize a rehearing.[5]

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] I note appellant does not claim to be innocent.  Indeed, in his filings with this court appellant admits his actions were criminal.  Nor does appellant claim that had the military judge attempted to resolve the inconsistency caused by his unsworn statement (i.e. the one's I feel should have been further addressed) that he would have answered the judge's inquiry in a manner inconsistent with guilt.  Finally, appellant specifically asks for relief that does not include a rehearing where he can withdraw his plea.  In *United States v. Kilgore*, 21 U.S.C.M.A. 35, 44 C.M.R. 89 (1971), the Army Judge Advocate General certified the issue of whether this court must find prejudice before setting aside a conviction based on a *Care* violation. (That is, what is the relationship between Article 45(a) and Article 59(a), UCMJ). In other words do we look to see if the *Care* violation actually effected the voluntariness or knowingness of appellant's plea?  If, for example, appellant's defense counsel had adequately explained to appellant all the issues that I find the military judge should have explained, would we still be required to set aside the conviction?  However our superior court never decided the certified issue.  *But see, e.g., United States v. Felty*, 12 M.J. 438 (C.M.A. 1982) overruled by *United States v. Morton*, 69 M.J. 12 (C.A.A.F. 2010) (addressing a *Care* violation through the lens of Article 59(a), UCMJ, and repudiating the closely related offense doctrine promulgated by *Felty*).  However, I believe precedent nonetheless requires reversal in this case.  *See, e.g., United States v. Blouin*, 74 M.J. 247 (C.A.A.F. 2015); *United States v. Moon*, 73 M.J. 382 (C.A.A.F. 2014).